UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


J.A. BESTEMAN COMPANY,

        Plaintiff,

                                                  File No.  1:07-CV-931

v.

                                                  HON. ROBERT HOLMES BELL

CARTER'S INC., et al.,

        Defendants.
                                              /

**O P I N I O N**

This matter is before the Court on two motions for summary judgment filed by Plaintiff J.A. Besteman Company ("Besteman"). (Dkt. Nos. 9, 12.)[1] This case involves a trust created under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a-499s, against the assets of Defendant Carter's Inc. ("Carter's"). The Court recognized a PACA trust against Carter's assets for the benefit of Besteman in a 2006 case involving Besteman and Carter's. Besteman's first motion for summary judgment asks the Court to give the PACA trust, recognized by the Court in the prior case between Besteman and Carter's, preclusive effect against Carter's in the present case. Besteman's second motion for summary judgment seeks to apply the PACA trust to Defendant Northern Supermarkets Inc. ("Northern"), though the PACA trust was originally only recognized

---

[1]Unless otherwise indicated all docket numbers referenced are to the docket for File No. 1:07-CV-931.

against Carter's. Both motions are opposed by Defendant Nash Finch Company ("Nash Finch"). The Court held a hearing on these motions on April 3, 2008. For the reasons that follow, Besteman's motions for summary judgment will be granted in part and denied in part.

I.

Besteman is a dealer in perishable agricultural commodities. Carter's ran a chain of retail grocery stores and as of 2006 had purchased perishable agricultural commodities from Besteman for over twenty-two years.

Besteman is a Michigan corporation with offices located in Grand Rapids, Michigan. Besteman is a licensed dealer under the PACA. Defendant Carter's is a Michigan corporation and had offices in Charlotte, Michigan. Defendant Northern is a Michigan corporation and had offices in Charlotte, Michigan. Defendant Nash Finch is a Delaware corporation with its main office in Minneapolis, Minnesota. Defendant Nash Finch is the largest creditor of Carter's and Northern. Defendant Nash Finch holds perfected liens against a substantial portion of the assets of Carter's and Northern.

This case relates to a prior civil case that was before the Court, *J.A. Besteman Company v. Carter's Inc.*, File No. 1:06-CV-425. The Court will refer to the prior case as the 2006 case and the case that is currently before the Court as the 2007 case. On June 19, 2006, in the 2006 case, the Court entered a temporary restraining order that restrained Carter's from "pledging, conveying, transferring, or otherwise disposing of any assets in the

possession or control of Carter's Inc. outside the ordinary course of its business." (File No. 1:06-CV-425, Dkt. No. 6, 06/19/2006 TRO.) The TRO was based on the likelihood that Besteman would succeed on its PACA claim against the defendants in the 2006 case. (06/19/2006 TRO 1.) The defendants in the 2006 case were Carter's, William R. Harcourt, and Thomas V. Robinson. On June 29, 2006, the Court entered a consent judgment. (File No. 1:06-CV-425, Dkt. No. 10, 06/29/2006 Consent J.) The consent judgment recognized a PACA trust in favor of Besteman and against Carter's in the amount of $940,916.73. The consent judgment also dismissed with prejudice the other two defendants, William R. Harcourt and Thomas V. Robinson. Lastly, the consent judgment scheduled an evidentiary hearing before the Magistrate Judge to verify the scope of Besteman's PACA trust over Carter's assets. (06/29/2006 Consent J. 2.)

The Magistrate Judge held an evidentiary hearing on July 5, 2006. At the evidentiary hearing counsel appeared on behalf Besteman; however, counsel for Carter's did not appear. Counsel for Nash Finch were present at the hearing, but they did not enter a formal appearance. Nash Finch never sought to intervene in the 2006 case. On the record the Magistrate Judge inquired of one of Nash Finch's counsel as to their role at the evidentiary hearing. Nash Finch's counsel stated that they were present to observe on behalf of Nash Finch. (Dkt. No. 10, Besteman's Br. in Supp of Mot. I, Ex. F, Evidentiary Hr'g Tr. 3:18-4:11.) At the evidentiary hearing Besteman presented the testimony of Dennis Defrang, comptroller of Besteman, and David Besteman, president of Besteman. The Magistrate

Judge issued a report and recommendation ("R&R") on July 7, 2006. (File No. 1:06-CV-425, Dkt. No. 12, 07/07/2006 R&R.)  The Magistrate Judge made the following recommendations:

> A. That the court declare that plaintiff's trust under the Perishable Agricultural Commodities Act extends to all assets, real and personal, of defendant Carter's, Inc.; and
> B. That the court enter an order requiring Carter's, Inc. to immediately pay into the treasury of this court, for the benefit of plaintiff J.A. Besteman, any and all proceeds from any sale or other disposition of any of its real or personal property, including but not limited to inventory, until this court's previous judgment is paid in full, provided that Carter's, Inc. shall be allowed to meet its payroll and tax obligations before depositing proceeds into the treasury of this court.

(07/07/2006 R&R 6.) On July 11, 2006, Besteman filed an emergency motion that sought to have the R&R approved and adopted before the ten-day period for filing objections had passed. Besteman made this motion based on Carter's having shut down all of its operations on July 7, 2006. On July 12, 2006, the Court issued a memorandum opinion and order that approved and adopted the R&R with a modification to allow Carter's to pay its State of Michigan lottery trust obligations. (File No. 1:06-CV-425, Dkt. No. 15, 07/12/2006 Mem. Op. & Order.) The Court will refer to the June 29, 2006, consent judgment, the July 7, 2006, R&R, and the July 12, 2006, memorandum opinion collectively as the PACA Judgment.

On July 12, 2006, Carter's filed for Chapter 7 bankruptcy. On August 18, 2006, Northern filed for bankruptcy. On March 7, 2007, the Court entered an order staying the 2006 case based on Carter's bankruptcy. (File No. 1:06-CV-425, Dkt. No. 17, 03/07/2007 Order Staying Case.)

4

On August 23, 2006, in the Carter's bankruptcy a representative of Carter's stated that some of the assets listed on Carter's bankruptcy petition might actually belong to Northern. On October 17, 2006, Chief Bankruptcy Judge Jo Ann C. Stevenson entered a consent order establishing a procedure for resolution of the PACA claims. On October 19, 2006, Besteman filed a proof of claim for $940,916.73 in the Carter's bankruptcy. On December 11, 2006, Nash Finch objected to Besteman's proof of claim. On December 27, 2006, Besteman filed an adversary bankruptcy proceeding against Carter's, James Boyd as Chapter 7 Trustee of Carter's and Northern, Nash Finch, and Northern. Besteman's complaint in the adversary proceeding contains six counts; however, only Counts I and II are at issue in the motions for summary judgment presently before the Court. In Count I Besteman seeks recognition of the PACA Judgment as being valid and enforceable against Carter's. In Count II Besteman requests that its PACA claim against Carter's be recognized as an allowed PACA claim with respect to any and all assets and proceeds of Northern.

On July 23, 2007, Chief Bankruptcy Judge Jo Ann C. Stevenson dismissed Besteman's motion for summary judgment in the bankruptcy case because resolution of the adversary proceeding "will have no impact on the bankruptcy estate because it is a priority dispute between two secured creditors[.]" (Dkt. No. 1, Request for Withdrawal of Reference at ¶ 28.)

On September 10, 2007, Chief Bankruptcy Judge Stevenson sua sponte requested the Court withdraw the adversary proceeding from the bankruptcy court. (*Id.* at ¶¶ 29-31.) On

5

October 18, 2007, the Court granted Chief Bankruptcy Judge Stevenson's request. (Dkt. No. 6, 10/18/2007 Mem. Op. & Order.)

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the defendants carry their burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). "'[W]here the moving party has the burden – the plaintiff on a claim for relief or defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D.

465, 487-88 (1984)).  "[I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'"  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (quoting 11 James Wm. Moore, et al., *Moore's Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)).  Thus, "[s]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III.

**A.     Preclusive Effect of the PACA Judgment**

Besteman's first motion for summary judgment asks the Court to give the PACA Judgment from the 2006 case between Besteman and Carter's claim preclusive effect against Carter's in the 2007 case.

A federal court applies federal law in determining the preclusive effect of a prior federal judgment where jurisdiction in the prior litigation was based on a federal question.  *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 n.12 (1971); *Taveras v. Taveraz*, 477 F.3d 767, 783 (6th Cir. 2007).  The parties' briefs have used the term "res judicata."  "Res judicata bars the relitigation of the same claim or cause of action[,]" *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840 (6th Cir. 1997); however,

the Sixth Circuit has indicated that it is a better practice to refer to the concept encompassed by res judicata as "claim preclusion," *Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir. 1997). Therefore, the Court will use the term "claim preclusion."

Federal claim preclusion stemming from a final judgment precludes not only relitigation of issues that were raised, but also theories of recovery that could have been litigated. *Blakely v. United States*, 276 F.3d 853, 866 (6th Cir. 2002); *J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). A "claim is precluded if (1) there is a final judgment on the merits in an earlier action; (2) there is a sufficient identity between the parties in the two suits; and (3) there is a sufficient identity of the causes of action in the two suits." *Blakely*, 276 F.3d at 866 (citing *Ortiz-Cameron v. Drug Enforcement Admin.*, 139 F.3d 4, 5 (1st Cir. 1998)).

The Court first must determine if there was a final judgment on the merits in the 2006 case. "A consent judgment, which has been freely negotiated by the parties and has been approved by the court, has the full effect of final judgment for purposes of claim preclusion." *Blakely*, 276 F.3d at 866 (citing *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 858 (5th Cir. 2000)). Therefore the inclusion of the June 29, 2006, consent judgment in the PACA Judgment does not preclude the PACA Judgment from constituting a final judgment on the merits. Nash Finch makes two contentions as to why the PACA Judgment is not a final judgment on the merits.

First, Nash Finch contends that the abbreviated time-table of the evidentiary hearing, R&R, and adoption of the R&R in the 2006 case means that there was no final judgment on the merits in the 2006 case. In support of this Nash Finch alleges that the evidence Besteman presented at the evidentiary hearing was insufficient to support the recognition of a PACA trust. Assuming *arguendo* that there was some insufficiency in the evidence presented at the evidentiary hearing, the PACA Judgment has claim preclusive effect because the claim preclusive effect of a "'final, unappealed judgment on the merits [is] not altered by the fact that the judgment may have been wrong . . . .'" *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 550 (6th Cir. 2005) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). *See also Cuba Timber Co. v. Boswell*, 339 F. Supp. 2d 773, 777 n.4 (S.D. Miss. 2004) (discussing the applicability of claim preclusion even when the prior judgment being given effect is "obviously wrong").

Second, Nash Finch contends that there was no final judgment on the merits because the Court did not allow the full ten days for objections to be filed to the R&R in the 2006 case. The Court's July 12 memorandum opinion that adopted the R&R specifically addressed the issue of the abbreviated time-table.

> Clearly, time is of the essence in this matter. Given the precarious situation presented in this case, the Court conducted an expedited, yet careful, review of the Magistrate Judge's Report and Recommendation. *See McGill v. Goff*, 17 F.3d 729 (5th Cir. 1994) (holding that district court's adoption of the magistrate judge's report and recommendation one day after issuance did not constitute reversible error where district court conducted a meaningful review of the report and recommendation), *overruled on other grounds Kansa Reins. Corp. v. Congressional Mortgage Co.*, 20 F.3d 1362, 1373-74 (5th Cir. 1994).

(07/12/2006 Mem. Op. & Order 3.) As the Court's July 12 memorandum opinion explained, the decision of a district court to adopt an R&R before the expiration of the ten-day period for objections does not impair the validity of the district court's decision. *Sumlin v. United States*, 46 F.3d 48, 49 (8th Cir. 1995); *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 646-47 (5th Cir. 1994); *see also Thomas v. Arn*, 474 U.S. 140, 154 (1985) ("The district judge has jurisdiction over the case at all times. He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment."). Thus, the Court's adoption of the R&R before the expiration of the ten-day period for the filing of objections does not preclude the July 12 memorandum opinion from constituting a final decision on the merits as part of the PACA Judgment.

Next the Court must determine if there is a sufficient identity between the parties in the two suits. Count I of Besteman's complaint seeks to apply the PACA Judgment against Carter's, not Nash Finch. (Dkt. No. 19, Att. 1, Besteman's Compl. ¶¶ 40-45.) Nash Finch's involvement stems from Nash Finch's objection to Besteman's PACA proof of claim against Carter's. Nash Finch's objection does not, however, convert Count I of Besteman's complaint into a claim against Nash Finch. This remains true even if Besteman successfully applying the PACA Judgment against Carter's in the bankruptcy proceeding will reduce the amount that Nash Finch can recover on its claims against Carter's. *Chiquita Fresh, N.A. v. Speciality Produce Co.*, 2003 U.S. Dist. LEXIS 24389, at *26-27 (magistrate judge's report and recommendation), *approved and adopted* 2004 U.S. Dist. LEXIS 900 (E.D. Tenn. Jan. 12, 2004).

Nash Finch argues that claim preclusion is inapplicable because there is insufficient identity between it and Carter's. Nash Finch's argument errs in that it is based on Besteman seeking to apply the PACA Judgment to Nash Finch. Besteman's application of the PACA Judgment against Carter's may have collateral consequences for Nash Finch, but that does not mean that Besteman is seeking to give the PACA Judgment claim preclusive effect against Nash Finch. Nash Finch is correct that there is insufficient identity between Carter's and Nash Finch for the PACA Judgment to have claim preclusive effect against Nash Finch. However, that insufficiency does not alter the claim preclusive effect of the PACA Judgment against Carter's because Besteman has not sought to give the PACA Judgment claim preclusive against Nash Finch. Thus there is a sufficient identity between the parties in the two suits.

Lastly, the Court must determine that there is a sufficient identity of the causes of action in the two suits. Besteman seeks to apply the PACA Judgment against Carter's. The cause of action Besteman seeks to apply to Carter's in the 2007 case is identical to the cause of action in the 2006 case. Thus there is a sufficient identity of the causes of action in the two cases.

The Court having determined that the three components of claim preclusion are satisfied as a matter of summary judgment, Besteman's motion for summary judgment as to Count I will be granted. As the Court has determined that claim preclusion applies, the Court need not resolve Besteman's contentions regarding the application of issue preclusion.

B.   **Scope of the PACA Trust**

Besteman's second motion for summary judgment seeks to apply the PACA trust recognized by the PACA Judgment to Defendant Northern, though the PACA Judgment only applied to Carter's. Besteman seeks to apply the PACA trust to Northern by piercing the corporate veil between Carter's and Northern.

Both Carter's and Northern are Michigan corporations. "Under Michigan law, there is a presumption that the corporate form will be respected." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007) (citing *Seasword v. Hilti*, 449 Mich. 542, 547, 537 N.W.2d 221 (1995)). "'This presumption, often called the 'corporate veil,' may be pierced only where an otherwise separate corporate existence has been used to subvert justice or cause a result that [is] contrary to some overriding public policy.'" *Id.* (quoting *Seasword*, 449 Mich. at 548) (alteration in *Seasword*). "Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Id.* (citing *Foodland Distribs. v. Al-Naimi*, 220 Mich. App. 453, 457, 559 N.W.2d 379 (1996)). In determining whether to pierce the corporate veil "each case is sui generis and must be decided in accordance with its own underlying facts." *Herman v. Mobile Homes Corp.*, 317 Mich. 233, 243, 26 N.W.2d 757 (1947).

The Court must first determine if Northern was a mere instrumentality of Carter's. In determining whether an entity is a mere instrumentality, the relevant factors to consider

include: (1) the sharing of the same address, *Shirley v. Drackett Prods. Co.*, 26 Mich. App. 644, 648, 182 N.W.2d 726 (1970), (2) interlocking officers and directors, *id.*, (3) the absence of corporate formalities, *United States v. Walton*, 909 F.2d 915, 928 (6th Cir. 1990), and (4) the commingling of funds, *id.*

On August 23, 2006, a Section 341 hearing was held in the bankruptcy of Carter's. At that hearing the president of Carter's, Thomas Robinson, testified. (Dkt. No. 13, Besteman's Br. in Supp. of Summ. J. on Count II, Ex. E, Section 341 Hr'g Tr.) Mr. Robinson testified that Carter's and Northern were run as a single company "for all intents and purposes . . . ." (Section 341 Hr'g Tr. 3.) As to the board of directors, Mr. Robinson testified that Northern and Carter's boards of directors were comprised of the same individuals. (Section 341 Hr'g Tr. 3.) As to the finances of Carter's and Northern, Mr. Robinson testified that the list of assets included in Carter's bankruptcy filing was for the "consolidated company," so it included the assets of both Carter's and Northern. (Section 341 Hr'g Tr. 3.) Mr. Robinson also testified that all of the bills for both Carter's and Northern were paid out of Carter's bank account. (Section 341 Hr'g Tr. 3.) In response, Nash Finch offers an affidavit from the bankruptcy trustee; however, the trustee's affidavit only offers additional and related facts and does not contradict Mr. Robinson's testimony. (Dkt. No. 17, Nash Finch's Br. in Opp'n, Ex. 1, Boyd Aff.)

Of particular importance to the PACA trust is the fact that Northern was the actual PACA licensee but the payments for agricultural products that provided the basis for the

PACA trust were drawn on Carter's bank account. (Besteman's Br. in Supp. of Summ. J. on Count II, Ex. C, PACA License.) Section 3(c) of the PACA permits a PACA licensee to operate under a trade name and Northern's license permitted it to operate as Carter's Food Center and Carter's Plus. 7 U.S.C. § 499c(c); (PACA License.) However, in any given transaction it would have appeared to a counter-party, such as Besteman, that all transactions were with Carter's because Northern operated under the Carter's name and Northern's obligations were paid from Carter's bank account. The appearance to outsiders of only dealing with Carter's is further supported by the affidavit of David Besteman, in which he states that Besteman understood that it was only dealing with one company, Carter's. (Besteman's Br. in Supp. of Summ. J. on Count II, Ex. B, Besteman Aff. ¶¶ 6-8.)

In both the 2006 case and the bankruptcy, a list of assets was provided that was represented to be a list of the assets of Carter's, but in fact included assets of both Carter's and Northern. In the 2006 case, the June 29, 2006, consent judgment obligated Carter's to provide Besteman with Carter's fixed asset depreciation schedule. (06/29/2006 Consent J. 2.) The fixed asset depreciation schedule was admitted into evidence at the July 5, 2006, evidentiary hearing. (Besteman's Br. in Supp. of Summ. J. on Count II, Ex. G, Carter's Fixed Asset Depreciation Schedule as of 06/28/2006; Evidentiary Hr'g Tr. 12:10-14:10.) However, at the Section 341 hearing Mr. Robinson acknowledged that the schedule included assets of Carter's and Northern. (Section 341 Hr'g Tr. 2.) In the bankruptcy case for Carter's, Carter's schedule 29b is an updated version of Carter's fixed asset depreciation

14

schedule that, like the earlier schedule, includes assets of both Carter's and Northern. (Besteman's Br. in Supp. of Summ. J. on Count II, Ex. K, Carter's Fixed Asset Depreciation Schedule as of 07/13/2006.) Thus, Carter's has twice represented in related legal proceedings that Northern's assets are Carter's assets. The affidavit of the bankruptcy trustee states that in the trustee's view the presence of Carter's name at the top of these documents should not be taken as indicative of ownership. (Boyd Aff. ¶ 6.c.) However, the significance of these two documents derives not from "Carter's Inc." appearing at the top of the documents, but from Carter's having twice offered these documents as a list of Carter's assets in legal proceedings.

The Court must next consider whether Northern was used to commit a fraud or wrong. The Michigan Supreme Court has indicated that this requirement is met when recognizing the separation between two corporations "'will work a fraud upon the law.'" *Herman*, 317 Mich. at 247 (quoting *Berkey v. Third Ave. Ry.*, 155 N.E. 58, 60 (N.Y. 1926)). Although section 3(c) of the PACA permits the use of trade names, it precludes the use of trade names that would be "deceptive" to the trade. 7 U.S.C. § 499c(c). If the PACA Judgment only applies to Carter's then Northern will have used the trade name it was authorized to use in a manner that was deceptive and such deception would work a fraud upon the law. Carter's and Northern further perpetuated this fraud upon the law by twice representing lists of assets that included assets of Northern and Carter's as lists of Carter's assets in related legal proceedings.

Lastly, the Court must consider whether Besteman will suffer an unjust loss if the corporate veil is not pierced. Besteman operated with the understanding that it was dealing with a single corporation, Carter's. (Besteman Aff. ¶¶ 6-8.) Congress enacted the PACA to "protect unpaid sellers of perishable agricultural commodities." *Overton Distribs. v. Heritage Bank*, 340 F.3d 361, 364 (6th Cir. 2003). A PACA trust "protects the sellers against financing arrangements made by merchants, dealers, or brokers who encumber or give lenders a security interest in the commodities or the receivables or proceeds from the sale of the commodities, thus giving the claims of these sellers precedence over those of secured creditors." *Id.* at 365. The PACA represents a judgment by Congress of the importance of protecting the sellers of perishable agricultural commodities, such as Besteman. As not piercing the corporate veil would serve to thwart the PACA, then given the congressional judgment embodied in the PACA, Besteman would suffer an unjust loss if the corporate veil is not pierced.

Besteman is entitled to summary judgment as to the piercing of the corporate veil between Carter's and Northern. However, the piercing of the corporate veil "must be decided in accordance with its own underlying facts." *Herman*, 317 Mich. at 243. The Court's analysis has been limited to piercing the corporate veil with respect to the PACA Judgment, so the veil is pierced only with respect to the application of the PACA Judgment to Northern.

## IV.

For the foregoing reasons, Besteman's motion for summary judgment as to Count I is granted as to claim preclusion and denied as to issue preclusion. Besteman's motion for summary judgment as to Count II is granted as to the applicability of the PACA Judgment to Northern and is otherwise denied. An order will be entered consistent with this opinion.


Date:    May 12, 2008              /s/ Robert Holmes Bell
                                   ROBERT HOLMES BELL
                                   CHIEF UNITED STATES DISTRICT JUDGE